HOOD, Judge.
Mrs. Adriel Miers, Jr., individually and as tutrix of her minor children, instituted this suit for damages for the death of her husband. The suit was originally filed against four parties, but it was dismissed as to two of them, leaving as the sole remaining defendants, Bailey Transportation Company, Inc., and its liability insurer, Truck Insurance Exchange. After trial, judgment was rendered by the trial court rejecting plaintiff’s demands, and plaintiff has appealed.
Another tort action arising out of the same accident was instituted by Earl Stro-ther against the same defendants, and that suit was consolidated with this one for trial and appeal. Judgment was rendered adversely to plaintiff in that suit, and plaintiff appealed. We are deciding the companion suit on this date. See Strother v. LeJeune et al., La.App., 180 So.2d 563.
Plaintiff’s husband, Adriel Miers, Jr., and the plaintiff in the companion suit, Earl Strother, were seriously injured on May 18, 1959, while they were working as employees of Bill Murray & Company. Miers died a few days later as a result of the injuries which he sustained on that occasion.
At the time these injuries were sustained, Bill Murray & Company was the principal contractor engaged in laying a sixteen-inch pipeline in Calcasieu Parish. Bailey Transportation Company, Inc., was a sub-contractor of Murray, and under the terms of that sub-contract Bailey was to “string” the pipe along the right-of-way. The right-of-way for the pipeline ran parallel with and adjacent to a railroad right-of-way, and above both of these rights-of-way there existed a high-voltage electric highline.
W. O. Bailey, the president of Bailey Transportation Company, Inc., was actively in charge of the work which was being performed under this sub-contract. Bailey had several pieces of heavy equipment which were being used to string the pipe on this job, one piece of equipment being a “gin pole truck.” This truck was equipped with a mechanical structure or device, known as a “gin pole” or “boom.” The gin pole was located on the rear of the truck, and by means of attached pulleys and cables and the power provided by the engine of the truck, the gin pole or boom could be raised or lowered, and it was designed to lift heavy objects. It was used here to load, unload, lift and move heavy joints of pipe. There was a cab on the truck, which’ was occupied by the driver when the truck was being moved or driven. When the gin pole was being used, the person who operated it sat in a seat located to the side of and behind the cab, facing the rear of the truck, and among the controls which he operated in using the gin pole was a clutch and an accelerator. The clutch pedal in the rear of the truck was connected by some mechanical means to the clutch pedal in the cab, so that when one of these pedals was depressed or released the other would also be depressed or released. The same type of connection existed between the two accelerators. When the gin pole was in a raised position, it extended high enough into the air to enable the top of the gin pole to come in contact with the electric highlines.
At about 2:30 p. m. on May 18, 1959, Bailey’s men had completed their day’s work and they left the job. Shortly thereafter, L. C. Anderson, the pipe foreman em *561 ployed by Murray, notified Bailey that he needed to have two more joints of pipe moved from one side of the railroad track to the other. Bailey informed Anderson that his men had left for the day, and Anderson thereupon inquired as to whether he could use Bailey’s gin pole truck for the purpose of moving these two joints of pipe, with employees of Murray operating the truck. Bailey consented to their use of this truck. Anderson thereupon got on the back of the truck, in the proper position for operating the gin pole, and by manipulating the controls located there he unloaded two joints of pipe from a pipe truck and placed them on the ground. He then picked up one of these joints of pipe and lifted it across to the other side of the railroad, using the gin pole on the truck for that purpose. Anderson then proceeded to pick up the second joint of pipe with the gin pole, and after doing so he ordered L. D. Lejeune, another employee of Murray, to get into the cab of the truck and drive it forward while this joint of pipe was being held suspended above the ground. Pursuant to these instructions, Lejeune got into the cab of the truck, drove the truck forward under instructions from Anderson, and while the truck was being driven forward the upper part of the gin pole either struck or came in close proximity to the electric highline, causing high voltage electricity to flow through the gin pole, cables and the pipe which was being suspended by those cables. Miers and Strother, both of whom were employees of Bill Murray & Company, were assisting in the unloading and moving of these joints of pipe at that time. Miers was hooking and unhooking the cable to the pipes, and Strother was “buffing” the ends of the pipes. Both were either touching the pipe or were in close proximity to it when the gin pole came in contact with the electric highline. The electricity flowing through the gin pole, cables and pipe caused Miers and Strother to receive severe electrical shocks and burns. As we have already mentioned, Miers died a few days later from the injuries which he received in that accident.
Plaintiffs contend that the accelerator and clutch of the gin pole truck were defective, that these defects caused the accident, that Bailey was aware of these defects, and that he failed to notify the persons who were operating the truck of such defects. Plaintiffs argue that the proximate cause of the accident was the negligence of Bailey in maintaining and permitting the use of a defective and dangerous truck, in failing to warn Lejeune of the condition of the truck, in failing to properly observe and supervise the operation of said truck in the proximity of dangerous high-voltage wires, and in calling upon unskilled and untrained persons to operate a dangerous and complicated machine which was known to have radical defects.
The first important issue presented is whether the gin pole truck was defective, and if so, was the defective condition of that truck a proximate cause of the accident.
The trial judge concluded “that the plaintiffs have failed to prove by a preponderance of the evidence that there was any defect in the operations of the truck "Vhat was a proximate cause of the accident.” The established rule is that the trial judge’s findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Hudson v. Arceneaux, La.App. 3 Cir., 169 So.2d 731 (writ refused).
Robert Ousley, who was working for Bailey as a heavy equipment operator at the time this accident occurred, testified that he examined this truck a day or two before the accident and operated it that morning, and that he determined then that the accelerator and the clutch on the back of the truck would stick occasionally when depressed. He concluded that a spring on the accelerator was not strong enough to make it return to its former position after being depressed, and that the truck needed greasing. He testified that he told Bailey about *562 these defects in the truck shortly before the accident occurred. Billy Harrison, who al.so was an employee of Bailey at that time, testified that he observed Ousley having trouble with the accelerator while endeavoring to operate the gin pole, and that he overheard Ousley telling Bailey about it L. C. Anderson, foreman for Murray, testified that the motor of the truck was “revving up” at the time the accident occurred, which indicated to him that the accelerator may have stuck. And, L. D. Lejeune testified that earlier that afternoon he had attempted to raise the gin pole, that he was unable to do so successfully, and that he concluded from that that there was a faulty ■clutch in the rear of the truck, although he ■conceded that he did not know anything :about that type of machinery.
The above mentioned evidence tends to show that the accelerator and the clutch on the truck did stick, and that there was a ■causal connection between the defects and the accident.
Bailey, however, denies that there were .any defects in the truck. On the contrary, he States that the gin pole had recently been installed, that this particular truck had not arrived at the site of this job, or even in Louisiana, until the day on which the acci■dent occurred, and that Ousley could not have examined it prior to the time of the accident. He further testified that no ■changes or repairs of any kind were made in the truck between the date of the accident and September 2, 1959, when the truck was examined by Dr. William IT. Tonn, a ■consulting engineer. Dr. Tonn was qualified as an expert in trucks of this type, and he testified that after examining the truck carefully, he found it to be in excellent shape with no defects, and that the accelerator did not stick and the clutch did not hang up.
Although Lejeune testified that earlier that afternoon he felt that there was a faulty clutch in the rear of the truck, he conceded that he did not know anything about operating a gin pole, and that when Anderson took over that operation from him, Anderson raised and operated the gin pole without difficulty, indicating that there was nothing wrong with the clutch. And, Anderson confirmed the fact that he found no defects in the accelerator or clutch when he operated the gin pole. Lejeune further testified that in response to instructions which he received from Anderson immediately before the accident, he got into the cab of the truck and moved the vehicle forward a few feet and then came to a stop. Anderson then told him to move it up further until he hollered “whoa.” Le-jeune then proceeded to drive the truck forward again and when he did so the accident occurred. Lejeune testified positively that the accelerator did not stick while he was driving the truck, the clutch did not hang up, and that he found no fault or defect in the truck whatsoever as he wa? moving it forward. He says that he complied strictly with the instructions which he received from Anderson, and that if the accelerator had stuck, “all in the world I would have had to do was put my foot on the clutch and it (the truck) would have stopped.”
Anderson testified that he does not know whether the accelerator stuck on the truck or not, although he did notice that the engine was revving up. He stated that as far as he knew “there was no defect in the operation of the boom or anything like that.” He was not operating the accelerator or the clutch on the back of the truck when the accident occurred. The gin pole had already been raised and it simply remained in that raised position as the truck was being driven forward. Anderson further stated that he was not looking up at the electric highlines, and for that reason he does not know whether Lejeune drove ahead too far. He erroneously thought that Lejeune could see the highlines. He concedes that he told Lejeune to pull ahead and then to hold it, and that Lejeune did exactly what he was instructed to do. He also stated that in the event the accelerator in the cab had stuck, the driver could *563 have stopped the truck by depressing the clutch.
Lejeune and Anderson clearly were in better positions than anyone else to determine whether a defect in the accelerator or clutch caused the accident. We think their testimony shows that the accelerator did not stick and the clutch did not hang up while the truck was being driven forward. Even if we assume that the defects alleged by plaintiffs did exist, an assumption which we do not think is justified by the evidence, it is apparent that there was no causal relationship between those defects and the accident. The trial judge correctly held, therefore, that the accident did not result from any defects in the truck.
Plaintiffs further contend that Bailey was negligent in failing to properly 'observe and supervise the operation of the gin pole truck in the vicinity of high-voltage electric wires. Bailey was standing near his automobile, about forty or fifty feet from the gin pole truck, when the accident occurred. He testified, and the evidence shows, that he had taken no part in directing or supervising these operations. Anderson, in fact, testified that Bailey told him that he did not know how to operate the gin pole. Bailey further stated that when he noticed that the truck was getting close to the highline he pointed to the line with his finger in an attempt to warn Anderson, but that the accident occurred at that instant. Under these facts, we find no negligence on the part of Bailey in failing to supervise or to warn of the danger.
Since Bailey did not direct or supervise the operations which were being conducted with the truck at that time, and since he did not ask or instruct anyone to operate either the truck or the gin pole, there is no merit to plaintiffs’ argument that he was negligent in calling upon unskilled and untrained persons to operate a dangerous and complicated machine.
We think the trial judge correctly held that plaintiffs had failed to prove by a preponderance of the evidence that there was-a defect in the truck at the time the accident occurred which had a causal connection with the accident and injuries. He,, therefore, correctly rejected the plaintiff’s, demands in each case.
For the reasons herein assigned, the judgment appealed from is affirmed. The costs, of this appeal are assessed to plaintiff-appellant.
Affirmed.