331 So.2d 167 (1976)
Gloria WALKER, Plaintiff-Appellant,
v.
BELDEN CORPORATION, Defendant-Appellant.
No. 5358.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1976.
Rehearing Denied May 19, 1976.
Writ Refused July 1, 1976.
*168 Edward A. Kaplan, Alexandria, for Wm. Henry Sanders, Jena, for plaintiff-appellant-appellee.
Gaharan, Richey & Wilson by Joseph Wilson, Jena, for defendant-appellee-appellant.
Before HOOD, GUIDRY and PETERS, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Gloria Walker against her former employer, Belden Corporation. The trial judge rendered judgment in favor of plaintiff awarding her compensation benefits of $50.70 per week for sixteen weeks. Both parties have appealed. Plaintiff also answered defendant's appeal.
The issues presented are whether a work-connected accident resulting in a disabling injury occurred, as contended by plaintiff, whether plaintiff is totally and permanently disabled, and whether the amount of weekly benefits awarded by the trial court should be increased.
Plaintiff contends that she injured her right knee on February 25, 1975, while working as a "miscellaneous finisher" or a "booter" for Belden Corporation, which was doing business in Jena as LaSalle Wire and Cable Company. Her duties as a miscellaneous finisher were to place rubber "boots" or "nipples" on automobile ignition wires. In order to perform that work, it was necessary for her to sit at a table, to place the boot in the proper position over the copper fittings on the wires, and then operate a pneumatic machine by means of a foot pedal which forced the boots onto the ignition fittings.
Mrs. Walker reported for work at about 3:00 P.M. on February 25, 1975, and she testified that shortly thereafter her right knee struck a drawer located under the table causing her to suffer severe pain in her right knee. She stated that she immediately "jumped up and . . . hollered a little bit" and said in a "kinda loud" voice, "Ouch, I hurt my knee," and that she then hopped several feet over to the place where her fellow employees, Dollie Smith and Addie Lewis, were working and informed them of her injury. She said that she also reported the accident to five other co-employees that afternoon. Despite this alleged injury, plaintiff continued to perform the duties of her employment until she completed her regular shift of work at about 11:00 P.M. that day. She received medical treatment the following day, February 26, and she remained under the treatment of her doctor for a period of two or three months thereafter.
Plaintiff applied for a leave of absence on February 26, 1975, the day after her alleged injury. Her application was granted and she has been on a leave of absence continuously since that time. The leave which was granted to her, effective February 27, 1975, lists "illness" as the reason for granting it.
Plaintiff had surgery performed on her left leg in 1971, consisting of the stripping of veins in that leg. She stated that since that operation was performed, she has had poor circulation in her left leg and that that leg pains her while she works.
Plaintiff also sustained a prior injury to her right knee in 1972 while working for the same employer at another plant. She received medical treatment for that injury, and that treatment included the performance of surgery on her right knee about three weeks after the 1972 accident occurred. The surgeon used wire sutures on *169 the tendon of the right knee, and those wire sutures remained in her knee from the time that surgery was performed until they were removed about 16 days after the accident which forms the basis for this suit allegedly occurred. After a short period of recovery following that surgery, plaintiff returned to her employment later in 1972, and she continued to work from that time until February 26, 1975, except for several leaves of absence which she took during that period. She received no workman's compensation benefits as a result of the 1972 accident, other than a partial payment of the medical expenses which she incurred.
Dr. Sanit Sirikul, a general practitioner, examined plaintiff on February 26, 1975, and he treated her from that time until the latter part of May, 1975. He diagnosed her condition as "trauma of the right knee resulting from previous injury (1971), and aggravated by wire sutures and repeated trauma." He concluded that her present condition was due partly to "repeated trauma," because he "got this from her words." Dr. Sirikul performed a surgical procedure on her right knee on March 13, 1975, consisting of the removal of the above mentioned wire sutures from the tendon in that knee. Plaintiff's recovery from that surgical procedure was uneventful. Plaintiff nevertheless testified that she continues to suffer pain in her right knee and that she has been totally disabled since that time.
This suit was instituted on April 3, 1975, which was 37 days after the accident allegedly occurred. Plaintiff's deposition and that of Dr. Sirikul were taken in June, and the case was tried on its merits on July 17, 1975. The significance of these dates is that the facts must have been fresh on the minds of the witnesses, since the suit was filed and tried shortly after the accident occurred.
The trial judge rendered judgment immediately upon the conclusion of the trial. He found that an accident occurred on February 25, as claimed by plaintiff, and he awarded her compensation benefits for the period beginning February 26 and ending on July 14, 1975. As already noted, both parties appealed from that judgment.
The principal issue presented, and we think the determining one, is whether a work-connected accident occurred on February 25, 1975, as claimed by plaintiff, and if so, whether plaintiff sustained a disabling injury as a result of that accident.
We note at the outset that plaintiff has not alleged in any of her pleadings that an accident occurred, on February 25, 1975. She alleged in her original petition that:
"Plaintiffs then and there sustained an accidental injury in substantially the following manner: As she was booting, her right knee began hurting and swelled up, causing excruciating pain."
Plaintiff filed a "Pre-trial Information Sheet" on June 10, in which she indicated that on February 6, 1975, she sustained an accidental injury in substantially the following manner: "As she was booting, her right knee began hurting and swelled up, causing excruciating pain." She also stated in that pleading or document that "Dr. Sanit Sirikul diagnosed her condition as trauma of right knee: resulting from previous injury in 1971, aggravated by wire sutures and repeated trauma."
On July 3, 1975, plaintiff filed a supplemental petition, alleging that:
"Plaintiff then and there sustained an accidental injury in substantially the following manner: As she was booting, her right knee on numerous occasions struck the booting table and began hurting and swelled up, causing excruciating pain."
We interpret the above pleadings as alleging that plaintiff's knee began to swell and *170 to cause her to suffer pain, either without the occurrence of an accident or as the result of numerous accidents or repeated trauma. She testified at the trial, however, that her injury and disability resulted from one accident which occurred on February 25, 1975, when she struck her right knee on a drawer which was under her work table, and that she has been disabled since that time.
Plaintiff's testimony, as we understand it, is that her right knee struck the drawer under her work table several times as she approached the table to begin work, but that her knee was never injured and it never caused her to suffer pain or to complain about it at any time until February 25, 1975, when her knee struck the drawer harder than it had done so on any prior occasion. In response to the testimony of other witnesses that plaintiff had complained frequently of pain in her right knee, Mrs. Walker stated that her previous complaints were solely of pain in her left leg, due to poor circulation. With reference to those complaints, she said "It wasn't on the right knee," it was only "my left leg," and "that's all I ever complained about."
The drawer which she allegedly struck was located under the table top, on the right side of the operator. The testimony of witnesses, and the photographs which are in the record, indicate that the drawer was at least 12 to 16 inches above and to the right of the operator's right knee, and that it is unlikely that an operator would have struck her knee on that drawer either while approaching the table or while working at it. Plaintiff was somewhat obese, however, and she explained that because of her size her knee would strike the drawer while approaching the table although other employees did not have that difficulty.
Dr. Sirikul stated that when plaintiff first came to him for treatment she was "complaining of the wire sutures in the right knee," and he understood her to say that she had suffered repeated trauma of her knee over a period of time. According to the doctor's testimony, plaintiff did not tell him at any time that she struck her knee on February 25, the day immediately prior to her first visit to him. It seems to us that she would have told Dr. Sirikul about such an accident if it had occurred the previous day, and if it had marked the onset of her painful and disabling symptoms.
The hospital records signed by Dr. Sirikul show that she was admitted to the hospital on March 1, 1975, for the removal of the wire sutures. The hospital report states:
"The patient stated that she had wire sutures in the right knee when she underwent the operation on that extremity about 2 years ago. This was causing her discomfort. A piece of wire was passing through the skin and was removed not too long ago. She was irritated when she was moving that knee. She was then admitted for the removal of the wire sutures."
We have already noted plaintiff's testimony to the effect that immediately after she struck her knee on February 25, 1975, she complained in a loud voice and reported the accident to at least seven of her fellow employees who were present. All seven of these fellow employees testified at the trial, six of them having been called by plaintiff. Six of them contradicted plaintiff's testimony.
Plaintiff stated, for instance, that immediately after she injured her knee she hopped to the tables where two of her co-employees, Dollie Smith and Addie Lewis, were working, and that she told them about her injury and asked them where she could find George Fowler, the plant supervisor. Dollie Smith, a witness for plaintiff, confirms most of plaintiff's testimony. Addie Lewis, also a witness for plaintiff, testified that Mrs. Walker came to her table and told her she had hurt her knee, that plaintiff was not hopping or' limping *171 at that time, and that she worked the rest of the day. She understood that plaintiff was complaining of her old 1972 injury, since plaintiff said that she had sustained her injury from a fall, that surgery had been performed, that "she got some wire in her knee," and that "her knee continued to give her trouble." Mrs. Lewis also stated that prior to February 25, 1975, plaintiff complained about her right knee "all the time." She said "It wasn't a day that Gloria (plaintiff) came in the plant that she didn't say something about her leg was bothering her."
Mrs. Walker testified that after informing Dollie Smith and Addie Lewis of her injury, she then reported it that afternoon to (1) Fred Jordan, manufacturing supervisor for defendant, (2) George Fowler, supervisor of one shift, (3) Terry Copeland, personnel manager, (4) Glenn Poole, plant manager, and (5) Charliea Sandifer, a general worker at the plant. All of those witnesses, except Sandifer, were called by plaintiff.
Jordan, Copeland and Poole testified that plaintiff never reported the accident to them, and that they did not know anything about the alleged accident or injury until this suit was filed. Fowler stated that plaintiff called him over to her table one day and told him that she had hurt her knee, but that she continued to work "the rest of the week." He thought she was joking, but he nevertheless told her to see a doctor if she was hurt. He said that nothing more was said or done about such a complaint after that time. He also stated that plaintiff complained about her knees almost daily while she worked for defendant.
Plaintiff testified that she told another co-worker, Charliea Sandifer, that she had injured her knee immediately after the alleged accident occurred, that she showed the witness her knee and asked her to find George Fowler, that Mrs. Sandifer commented on the swelling of the knee, urged plaintiff to have it attended to, and then left to look for Fowler. Mrs. Sandifer was the only witness called by defendant. She firmly denied that plaintiff ever mentioned to her that she had struck or hurt her knee. She stated that plaintiff had complained about her knee on prior occasions, and particularly in December, 1974, and in January, 1975, and that plaintiff explained at the times of those complaints that "she had fell at the other plant and had hurt her knee and that it gives her trouble from time to time."
The plaintiff in a workmen's compensation suit, as in any other case, must prove his claim by a preponderance of the evidence. Schwab v. Fidelity and Casualty Company of New York, 294 So.2d 888 (La.App. 2 Cir. 1974); Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1 (1963); Roberts v. M. S. Carroll Co., 68 So.2d 689 (La.App. 2 Cir. 1953); Morrison v. East Baton Rouge Parish School Board, 316 So.2d 856 (La. App. 1 Cir. 1975).
The testimony of the claimant alone may be sufficient to prove the disabling accident, if the claimant's statements are supported by the surrounding circumstances and there is nothing to discredit his or her testimony as to how the accident occurred. Delafosse v. Industrial Painters, Inc., 199 So.2d 559 (La.App. 3 Cir. 1967); Clement v. Fidelity & Casualty Co. of New York, 220 So.2d 575 (La.App. 3 Cir. 1969); Webre v. Service Painting Company of Beaumont, 252 So.2d 675 (La.App. 1 Cir. 1971); and Schwab v. Fidelity and Casualty Company of New York, supra.
The findings of fact by the trial court, particularly those involving the credibility of witnesses, are entitled to great weight on appeal, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923 (La.App. 3 Cir. 1973); Matthews v. Milwhite Mud Sales Co., 225 So.2d 391 (La.App. 3 Cir. 1969); Lantier v. Guy Scroggins, Inc., 223 *172 So.2d 252 (La.App. 3 Cir. 1969); Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App. 3 Cir. 1966); Miers v. Truck Insurance Exchange, 180 So.2d 559 (La.App. 3 Cir. 1965).
We have reviewed the record with these established legal principals in mind, and have concluded that the evidence fails to show that plaintiff sustained a disabling injury as the result of a work-connected accident which occurred in February, 1975.
Plaintiff is the only person who claims to have witnessed the accident which allegedly occurred on February 25, 1975. One other witness, Dollie Smith, confirms her testimony that plaintiff told her that she had injured her knee a moment after the alleged accident occurred, that plaintiff was "cripping" at the time, and that her knee was swollen. We note, however, that Mrs. Smith also had sustained an injury while working for the same defendant, and it is apparent from her testimony that she had some animosity toward defendant, since she refused defendant's request that she speed up her work and she refused to talk to defendant's representative about the alleged accident. These circumstances tend to weaken the effect of her testimony.
The six other witnesses who plaintiff says were informed by her that she had hurt her knee contradicted plaintiff's statements. Their testimony thus tends to discredit plaintiff's statements as to the occurrence of the alleged accident. The evidence is convincing that plaintiff did not exhibit any signs of having sustained an injury on February 25, 1975, and that she did not inform her co-workers of the fact that she had hurt her knee that day. As already noted, none of her fellow employees saw the alleged accident occur.
Although plaintiff testified that she never complained of her right knee prior to the alleged accident, the evidence shows that she complained frequently of pain in that knee over a period of many months before February 25, 1975, when she allegedly struck it on a part of her work table. The testimony of her treating physician and the hospital records indicate that her complaints and her disability, if any, were attributable to the wire sutures which had remained in her knee since 1972, and not to an accident which occurred in February, 1975.
Plaintiff did not allege in her pleadings or inform her treating physician that she had struck her knee on February 25, 1975, as related by her at the trial. On the contrary, she alleged and informed her doctor that her knee had struck the booting table on numerous occasions and that it began hurting, swelling and paining her on some unspecified date. This indicates that she had been experiencing pain for some time after her 1972 surgery, and that she went to Dr. Sirikul on February 26 to obtain relief from that pain, and not because of any injuries which she suffered the day before she first consulted him.
Our conclusion is that the evidence fails to establish that an accident occurred on February 25, 1975, as claimed by plaintiff. The trial judge thus clearly erred in finding that plaintiff sustained a disabling injury resulting from a work-connected accident on that day, and in holding that plaintiff is entitled to recover workmen's compensation benefits.
For the reasons assigned, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant, Belden Corporation, and against plaintiff, Gloria Walker, rejecting plaintiff's demands and dismissing the suit at plaintiff's costs. The costs of this appeal are assessed to plaintiff-appellant.
REVERSED and RENDERED.