346 So.2d 1337 (1977)
Bobbie Gene DUNN, Plaintiff-Appellant,
v.
GLEN D. LOWE CO. et al., Defendants-Appellees.
No. 5846.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1977.
Rehearing Denied June 24, 1977.
Cameron C. Minard, Columbia, for plaintiff-appellant.
Walter M. Hunter, Jr., Alexandria, for defendants-appellees.
Before HOOD, FORET and HEARD, JJ.
HEARD, Judge.
Plaintiff, Bobbie Dunn, appeals from a judgment denying workmen's compensation benefits for a back injury sustained in an *1338 unwitnessed accident from which he is totally and permanently disabled.
This is an action for workmen's compensation benefits brought by plaintiff who claims he injured his back in an unwitnessed accident and is totally and permanently disabled. Since the date of the alleged accident, August 30, 1972, the plaintiff has undergone back surgery and there is no question but that he is presently disabled. He receives Social Security Benefits for the disabled along with Veterans Administration Benefits, and defendant did not argue the point at trial or in brief. The medical depositions offered in evidence were taken before his surgery and it appears the operation removed all doubt about the presence of a ruptured disc. The primary issue before the Court has narrowed to a question of whether or not plaintiff suffered a compensable accident in the defendant's employ on August 30, 1972.
It should be noted that this case was tried twice. A second trial was made necessary because the electronic recording equipment used at the original trial failed and a transcript of the proceedings could not be obtained.
Plaintiff contends emphatically he was injured picking up angle iron pieces for a co-employee worker on a particular job site called the KBB Lease on the 30th of August of 1972. He testified he hurt himself lifting a piece of angle iron during the afternoon and could not work throughout the remainder of the day. He said his back bothered him overnight and when he returned to work the next day, he concluded he could not perform the tasks required of him as a roustabout. He then notified his employer, Shelby Lowe, of his inability to continue his activity and Mr. Lowe had plaintiff driven home by another employee, Mr. Allbritton. Later that day plaintiff went to a physician who advised him to admit himself to the hospital which he did on the following day, September 1st. Clearly, plaintiff supported his memory of when things occurred by reference to when he first saw Dr. Winters and when he entered the hospital.
Plaintiff testified at length. As would be expected in a case tried so long after the fact, plaintiff's memory in some aspects of the matter appears to be vague. In his recitation of what happened, he did go into considerable detail. At one point he indicated that two welders were working nearby whom he identified as Fife and Adkins. A third welder, Whitehead, was working close to plaintiff. Plaintiff indicated he was picking up angle iron and carrying it to the place where Whitehead would work on the metal. In effect, his testimony is that he and Whitehead were working as a team at the moment. He said he experienced a sharp pain picking up one particular piece of iron. Apparently everybody on the job site was busy and it was noisy. Dunn indicated he did not think any of the others saw him hurt himself or saw him drop the piece of iron when he experienced the sharp painful sensation in his back. He testified that immediately after this occurred he went up to Whitehead and told him that he was injured and stopped working. He said he just sat around for an hour or an hour and a half or two hours until the work day ended and everybody went home. At various points in his testimony he indicated that the following named persons were present on the lease and working in the vicinity of his injury on August 30th.
 M. W. Fife A. D. Adkins
 Leroy Coates E. L. Allbritton
 Paul Newsome Jack Womack
 Randy Lowe Mr. Whitehead
Plaintiff was quite positive in his testimony that E. L. Allbritton was the employee assigned to carry him home on August 31st and that he informed Shelby Lowe on the morning of August 31st that he had been hurt. He says he worked on the KBB Lease all day on August 30th and at one point in his testimony, he said he didn't work for a Mr. McBroom until after the accident and after returning to work with the defendant employer after he got out of the hospital. He worked for the defendant employer from some time in late September until the following April. His employment relationship with defendant then ended after *1339 a fight between plaintiff and one of employer's bookkeepers.
Plaintiff's wife was his second witness and testified that he did not have any back disability prior to August 30, 1972 when he came home and complained that he was hurt. She recalls that he went to the doctor the next day after initially going to work and then being carried home by Mr. Allbritton and went into the hospital one day later. She testified that thereafter he worked consistently in pain and with difficulty and couldn't go back to heavy work.
The next witness called by plaintiff was E. L. "Bugs" Allbritton. He recalls being the co-employee who drove plaintiff home from work at the suggestion of Mr. Lowe. Mr. Allbritton did not witness the accident himself and could only vouch for the fact that plaintiff asserted on August 31st that he had injured himself the day before. This witness was not certain that plaintiff claimed to him he was injured on August 30th but thought that he had. His recollection was that the injury occurred on the KBB Lease and that he drove him home from that lease. He acknowledged he had given an earlier statement in which he said plaintiff had injured himself picking up pipe. At trial he stated pipe and angle iron were both present on the job and he did not know which was involved when the plaintiff was injured. He was of the belief Leroy Coates was working in the crew with plaintiff when he was injured. He testified that Lowe had instructed him to drive plaintiff home or to the doctor, depending on what plaintiff wanted.
Plaintiff's next witness was Mr. Paul Newsome. On direct examination Newsome recalled plaintiff got hurt on KBB Lease and he told him he hurt himself at that time. Based on his recollection of records that he discarded after the first trial, he testified they both worked on the KBB Lease on August 30th and that the plaintiff went to the hospital very shortly thereafter. He was carried home by Mr. "Bugs" Allbritton. On cross examination, Newsome admitted signing prior inconsistent statements introduced in evidence as Exhibits D-6 and D-7. In D-6 Newsome stated he did not know of any injury to Mr. Dunn during the time that they worked together. In D-7 Newsome stated that Dunn hurt himself on August 17th and last worked in a crew with Newsome on August 22nd.
The next witness called by plaintiff was Leroy Coates. The net effect of testimony from Mr. Coates was that he saw plaintiff in the hospital in September 1972 which is not a disputed point. He testified he heard that plaintiff was claiming he hurt himself on the job with Lowe but he doesn't know any of the details about it and was not a witness to it. He acknowledged that he went to work for a different employer around that time and said he wouldn't dispute the contention if Lowe's record reflected that he last worked for them on the 25th of August.
The first defense witness was L. C. McBroom who worked for defendant and knew the plaintiff. He turned in the time report on plaintiff's work for August 30th. He testified his crew on that date consisted of himself, Randy Lowe and the plaintiff and the three of them worked on rigs designated as C-8 and M-18, neither of which was in close proximity to the KBB Lease. He testified they did not work on the KBB Lease at all on the 30th of August. He said on another occasion he, Dunn and Lowe went to the KBB site to replace a clutch and stayed there only a short time because they did not have the proper replacement part. Later they went back and replaced the worn out equipment but this didn't take long. He said that on the occasion they were on the KBB site they did not do any work with angle iron. He said that he had no knowledge of any accident on the 30th and the plaintiff neither reported an injury during that day nor appeared to be injured on that date. Rather, he testified the plaintiff worked the full day without apparent incident or impairment. He further stated that after plaintiff got out of the hospital, he went back to his regular duties, most of which involved heavy lifting, without any complaints about his back. He said that after plaintiff quit all together, plaintiff *1340 told him that he had hurt his back on the job in Lowe's employ.
The second defense witness was Randy Lowe who testified after refreshing his memory by looking at the company time record card that he worked with the plaintiff on August 30, 1972, and that they worked on rigs designated by the company as C-8 and M-18. He said Mr. McBroom was a pusher or foreman on that date. He recalled that he had also worked on the KBB Lease but not on the 30th of August. He says he went on the KBB site only one time when the plaintiff was present and that was when a clutch was repaired. He denied plaintiff was injured on the 30th or told him he hurt himself during that day. He said the first he heard of the plaintiff being injured came on an occasion when he was at a cafe in Tullos and plaintiff was no longer working for Lowe. He acknowledged his recollection of dates was dependent on time records.
The third and final defense witness was Shelby Lowe. He was superintending operations for his father's business during all times pertinent to this suit. He testified he did not recall being notified plaintiff was injured on August 30th. He did not recall telling Allbritton to take plaintiff home on the 31st and said he didn't know anything about an incident of the 30th until long after that date. He said the plaintiff worked for the defendant employer fairly steadily prior to August 30th. He said his wife received a phone call in which it was said that plaintiff was in the hospital but he said he was not told it was a work related injury and didn't inquire about it. He testified that Mr. Dennison was the company bookkeeper in addition to other duties. He said that Dennison was not a very good bookkeeper and that Dennison did not record the dates on employees' time records. These were filled out by the pushers themselves.
Dennison did fill out the employer's accident reports to the insurance company. Two such reports were introduced in evidence. These are some discrepancies between the two documents. One is handwritten and one is typed. One bears the date of January 3, 1973. Both state that Newsome was Dunn's foreman, that the accident occurred on one of two dates in September on the Urania-M Lease while Dunn was picking up pipe trying to load it onto a truck. Lowe didn't know where the information on those two reports might have come from or who secured the information reflected on those reports but he said that it was Dennison's responsibility to get the information. Lowe signed them both.
Mr. Lowe further testified plaintiff worked after he was released from the hospital until approximately April in 1973. He said he didn't witness any accident such as the one described by the plaintiff and for the most part he was relying heavily on work time records for information concerning when plaintiff worked and where he worked. Mr. Lowe said he generally had 30 or 40 men working for him. He states unequivocably that Coates terminated his employment on August 25th.
The trial court held that plaintiff had failed to establish that his accident had occurred while he was working for defendant, and therefore found that defendant was not liable. From this judgment, plaintiff appealed.
Plaintiff contends that he was injured in the course and scope of his employment, and that he produced sufficient evidence to prove this contention.
In a workmen's compensation case, plaintiff has the burden of proof and to recover must establish by a preponderance of the evidence that his disability resulted from an accident sustained in the course of his employment. Although he does not have to prove causal connection between disability and employment to an absolute certainty, he is required to establish this to the extent of a reasonable probability. Teekell v. Campbell Construction Company, 160 So.2d 447 (La.App. 2 Cir. 1964); Johnson v. Cajun Enterprises, 293 So.2d 617 (La.App. 3 Cir. 1974).
Plaintiff also contends that he is entitled to the maximum benefits under the workmen's *1341 compensation law of five hundred (500) weeks at forty nine and no/100 ($49.00) dollars per week, which was the prevailing compensation rate at the time of his injury, less a credit of one and four sevenths weeks, which he has been paid, plus his medical expenses.
In workmen's compensation cases, as in other civil suits, the plaintiff bears the burden of proof and must establish his claim by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Johnson v. Cajun Enterprises, supra. Proof by a preponderance of the evidence requires only that the evidence as a whole shows that the fact sought to be proved is more probable than not. Prim v. City of Shreveport, supra. Bryant v. Slidell Memorial Hospital, 243 So.2d 285 (La.App. 1 Cir. 1970). The testimony of an employee alone is sufficient to establish that an accident occurred, provided that his testimony is supported by the surrounding facts, and circumstances and if there is nothing to discredit his account of the accident. Walker v. Belden Corporation, 331 So.2d 167 (La.App. 3 Cir. 1976). However, should the evidence leave the probabilities equally balanced, there is failure of the proof required by the plaintiff. White v. Freeport Chemical Company, 319 So.2d 563 (La.App. 4 Cir. 1975).
The trial court, in the present case, based its decision on two grounds: (1) that evidence presented was equally balanced on both sides, and that the rule of White v. Freeport Chemical Co., supra, was controlling; and (2) that plaintiff had failed to call as a witness one Whitehead, the welder whom plaintiff claims was working on the day the accident occurred. The trial court applied the general rule that the failure of a party to call an available witness, who possesses knowledge concerning facts essential to a party's cause, raises the presumption that the testimony of the witness who was not called would be detrimental.
Taking these reasons in reverse order, it has been held that when witnesses are as available to the defendants as they were to the plaintiff, and if the defense as to proof of occurrence of the accident is serious and has merit, then the defense has a duty to call these prospective witnesses. George v. United Fruit Company, 131 So.2d 360 (La. App. 4 Cir. 1961). Therefore, no presumption used by the trial court could have been applied just as easily against the defendants in this case.
As to the balance of the evidence, the defendants' witnesses rely heavily on time sheets to refresh their memory of the happenings of August 30, 1972. Yet testimony was given to the fact that a crew might work several jobs in one day, yet credit the time to only one job. Therefore, it is possible, since so much time was passed, that the witnesses for defendant were mistaken. We believe that the testimony as a whole, plus the fact that so much time has passed, necessitates a finding for plaintiff.
Plaintiff has medical bills amounting to $1,705.14. He is also entitled to compensation of $49.00 per week for a maximum of 500 weeks, minus a credit of $77.00 for one and four sevenths week compensation paid.
For the foregoing reasons the judgment of the trial court is reversed and set aside, and it is ordered that there be judgment in favor of the plaintiff, Bobbie Gene Dunn and against the defendants, Glen D. Lowe Company and Rockwood Insurance Company in solido for workman's compensation for a period not to exceed 500 weeks at $49.00 per week from August 30, 1972, together with legal interest on each installment from its due date until paid, less a credit of $77.00 compensation paid.
It is further ordered that there be judgment in favor of plaintiff, Bobbie Gene Dunn, and against defendants Glen D. Lowe Company and Rockwood Insurance Company in the sum of $1,705.14 as medical expenses, with legal interest from judicial demand until paid. All costs of this appeal are assessed to defendants.
REVERSED AND RENDERED.