503 So.2d 1109 (1987)
Bookie James FONTENOT, Plaintiff-Appellee,
v.
SCHLUMBERGER WELL SERVICE and Travelers Insurance Company, Defendant-Appellants.
No. 86-274.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
*1110 Brinkhaus, Dauzat and Falgoust, Jerry J. Falgoust, Opelousas, for defendant-appellants.
Felix A. Dejean, III, Opelousas, for plaintiff-appellee.
Before DOUCET, YELVERTON, and CULPEPPER[*], JJ.
DOUCET, Judge.
Upon denial of his claim for worker's compensation benefits, plaintiff filed suit against his employer, Schlumberger, and its worker's compensation insurer, Travelers Insurance Company. After trial on the merits, the district court awarded plaintiff *1111 temporary total disability compensation benefits, medical expenses, and attorney fees and penalties. Defendants have appealed.
The claim that is the subject of this appeal arises from an alleged accident and back injury suffered by plaintiff on June 4, 1984. Plaintiff began working for defendant, Schlumberger Well Service, in 1979. His work involves heavy lifting. In February 1982, plaintiff injured his back bending over to pick up a large wrench. He was examined by Dr. Frederick L. Mayer who diagnosed the injury as a pulled or strained muscle in his back. Plaintiff completely recovered within a few weeks and returned to his regular work activities with no restrictions. In January 1983, plaintiff returned to Dr. Mayer, complaining of difficulty in straightening up and of pain radiating into both legs. This was apparently the result of an incident which occurred as he was washing his automobile. Dr. Mayer treated him for a short period of time and again released him with no restrictions on work activity. In April 1984, he complained of pain in his lower back and both legs. No specific precipitating incident was documented by Dr. Mayer concerning this complaint and plaintiff was treated and released with no restrictions. Immediately prior to the occurrence of the alleged June 4, 1984 accident, plaintiff testified that he was not experiencing any pain and was working in his full capacity.
On June 4, 1984 plaintiff claims that he slipped and fell as he was stepping down from his truck while on a job. Plaintiff testified that he did not think anything of it at the time and continued working. A company policy requires an employee to notify his immediate supervisor at the job site of an accident and to file an accident report within seven days, both of which plaintiff admittedly failed to do. On June 6, 1984, plaintiff did mention to a fellow employee, Larry Young, that his leg hurt and explained the circumstances surrounding the slip and fall. Plaintiff's wife also testified that he told her of the accident within a few days after it happened.
Plaintiff testified that the pain in his leg continued to get worse and he finally went to see Dr. Mayer on June 13, 1984. Dr. Mayer stated that plaintiff complained chiefly of pain in his right hip and leg, but did not relate the occurrence of any accident to him. Plaintiff claims that he told Dr. Mayer that he was on a job when he was hurt, but did not tell him how he was hurt. The first documentation of any such accident in Dr. Mayer's records is dated February 28, 1985this despite plaintiff having seen him approximately twelve times since June, 1984.
At the time of the June 13th visit, Dr. Mayer testified that he felt plaintiff's problems were a continuation of his previous back problems and, in a written progress report dated August 14, 1984, stated that plaintiff "probably had a recurring small herniated lumbar disc...." The report went on to state that, "I feel his present problems probably stem back [sic] to his initial injury on the job in 1982." The possible ruptured disc was only discovered after a diagnostic lumbar myelogram performed after the June 13 complaints of pain. In October 1984, Dr. Mayer injected Chemopapain into the affected disc space which temporarily relieved plaintiff's leg pain. The pain recurred and in February 1985, Dr. Mayer operated on plaintiff's back, removing a large disc fragment which was lying underneath a nerve root.
Dr. Mayer testified that, assuming there was no accident on June 4, 1984, plaintiff's condition and surgery could be related to the January 1983 incident when plaintiff was washing his automobile. However, the doctor also testified that there was a marked difference in the June 1984 complaint of pain from the earlier complaints of pain and that something in June 1984 may have aggravated plaintiff's condition or caused something to happen. Dr. Mayer finally stated that the bottom line was that plaintiff was found with a ruptured disc and that "something happened" for plaintiff to come in on June 13, 1984 complaining of pain as he did. Dr. Mayer felt that plaintiff should avoid heavy lifting for the first year following surgery and use caution thereafter since he was minus a disc.
*1112 Plaintiff testified that he spoke to Jim Malone, a district manager for Schlumberger, on June 13, 1984 and informed him that he hurt himself on a job but couldn't remember how. Mr. Malone however, stated that plaintiff spoke to him on June 14th and told him that his back had been hurting since his injury in February 1982. Mr. Malone further testified that plaintiff did not tell him that he had hurt himself on June 4, 1984. An employer's report of occupational injury was filled out by Mr. Malone's secretary on June 20th with information allegedly obtained from plaintiff on June 14th. The report stated: "In employee's opinion, this is a RECURRING DISABILITY from injury of 02/19/82; employee has back pain since this time, however, it had gotten more severe several days prior to 6/14/84, so employee consulted again with Dr. Mayer at the Orthopaedic Surgery Clinic; copy of '82 report attached." Plaintiff denies making such a statement but claims instead that he informed Mr. Malone the pain felt pretty much the same as in 1982.
Plaintiff's wife worked for Dr. Mayer and after the plaintiff saw the doctor on June 13th she contacted Mr. Malone. Mr. Malone testified that he informed Mrs. Fontenot that it would be treated as a worker's compensation claim. On June 13, 1984, plaintiff began receiving disability payments from Schlumberger under its Salary Continuation Plan. Plaintiff was receiving these benefits at the time of trial. Most of his medical bills have been paid by Schlumberger through its health care plan administered by Aetna Life Insurance Company. Apparently the previously mentioned occupational injury report was submitted to defendant, Travelers Insurance Company, Schlumberger's worker's compensation insurer. In late October, plaintiff received a copy of a letter from Schlumberger to his physical therapist stating that Travelers had found plaintiff's injury not compensable.
After allegedly telling his fellow employee, Larry Young, about the slip and fall several days after the incident, plaintiff claims he forgot about it, remembering only that he somehow hurt himself on that job. He claims that he did not remember how he was hurt until he spoke with Mr. Young sometime in October and his memory was refreshed. Apparently, even after remembering, plaintiff failed to inform Mr. Malone or anyone else at Schlumberger as to the specific circumstances surrounding his injury. On January 22, 1985 plaintiff filed a claim with the Office of Worker's Compensation. That department's recommendations were rejected and this suit followed. Defendants filed a supplemental and amended answer which asked that, in the event the court awarded plaintiff compensation benefits, they be given credit for medical expenses paid by Aetna and for disability payments paid to plaintiff by Schlumberger.
The trial judge found that the June 4, 1984 accident did happen and resulted in an injury causing plaintiff temporary total disability. Plaintiff was awarded disability compensation benefits in the amount of $245.00 per week from June 4, 1984 to May 15, 1985, forty-nine weeks, and $18,286.02 in medical expenses. The court found that defendants acted arbitrarily and capriciously in denying worker's compensation benefits to plaintiff and awarded him statutory penalties in the amount of $3,634.92, and attorney fees in the amount of $5,000.00. The court denied defendants credit for any medical expenses or disability payments. On appeal, defendants cite four assignments of error.

ACCIDENT
Defendants first claim that the trial court abused its discretion in finding that the plaintiff was injured on June 4, 1984 and that the injury was within the course and scope of his employment. This is a factual finding by the trial court and the applicable standard of review was set forth in Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La. 1979):

"On appellate review, the trial court's factual findings of work-connected disability are entitled to great weight. They should not be disturbed *1113 where there is evidence before the trier of fact which, upon the latter's reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless clearly wrong. The reviewing court should not disturb reasonable evaluations of credibility and reasonable inferences of fact by the trial court, even though the reviewing court is of the opinion that other evaluations and inferences are as reasonable."

To recover worker's compensation benefits under Louisiana law, plaintiff must establish that the disability resulted from "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031; Gorbach v. Prager, Inc., 310 So.2d 604 (La.1975). Plaintiff must establish these facts by a preponderance of the evidence. Howard v. Tri-State Insurance Company, 359 So.2d 245 (La. App. 2nd Cir.1978); Dunn v. Glenn D. Lowe Co., 346 So.2d 1337 (La.App. 3rd Cir. 1977); Freeman v. Standard Materials, Inc., 246 So.2d 258 (La.App. 1st Cir.1971).
Defendants emphasize that the only witness who testified to the actual occurrence of the accident was the plaintiff. While this is a factor to be considered, the testimony of the injured employee alone may be sufficient to establish the occurrence of a work-related accident for worker's compensation purposes where the testimony is otherwise supported. Thompson v. Natchitoches Parish Hospital Service District, 335 So.2d 81 (La.App. 3rd Cir. 1976), writ denied, 338 So.2d 298 (La.1976); Crooks v. Belden Corporation, 334 So.2d 725 (La.App. 3rd Cir.1976).
There is no direct evidence to contradict plaintiff's claim that he slipped and fell while on the job. The evidence as a whole tends to support his claim even though he did not report the incident to his immediate supervisor on the job or file a report of injury written within seven days as required by company policy. The testimony of plaintiff's co-worker and that of his wife is uncontradicted that plaintiff related the occurrence of the accident and/or his subsequent pain to them within several days after the accident. Dr. Mayer's medical testimony is consistent with plaintiff's claim even though it may also be consistent with the defendants' position that no accident occurred.
However, the evidence is uncontroverted that the ruptured disc was only discovered by Dr. Mayer after plaintiff complained of pain at the June 13, 1984 examination. It is also uncontroverted that, except for perhaps a several day period on two different occasions, he worked in his full capacity from March 1982 until June 1984.
Accepting plaintiff's claim, the accident occurred as he stepped down from his employer's truck which was parked on a barge en route to a job site. He would not have been at that place but for the necessity of performing his job-related duties. Thus, the claimed disability resulted from personal injury by accident arising out of and in the course of his employment.
We find the evidence furnishes a reasonable factual basis for the finding by the trial court that plaintiff suffered an accident on June 4, 1984 which caused him to suffer a disabling injury entitling him to worker's compensation benefits. Such a finding is not clearly wrong. Assuming that the court did not abuse its discretion in making this finding, defendants do not dispute the determination that plaintiff was temporarily totally disabled under LSA-R.S. 23:1221(1).

PENALTIES AND ATTORNEY FEES
Defendants next claim that the trial court erred in finding that they acted arbitrarily and capriciously in denying plaintiff worker's compensation benefits and should not have awarded penalties and attorney fees to the plaintiff.
LSA-R.S. 23:1201 sets forth provisions for penalties and states in pertinent part:
"B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer has knowledge of the injury or death and resulting loss of income, *1114 on which date all such compensation then due shall be paid.
* * * * * *
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee." (emphasis added)
LSA-R.S. 23:1201.2 provides for attorney's fees as follows:
"Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter."
These amended statutes became effective July 1, 1983 and are applicable to the facts of this case. Prior to this date both attorney's fees and penalties were to be awarded when the failure to pay worker's compensation benefits was arbitrary, capricious, or without probable cause. LSA-R.S. 22:658; LSA-R.S. 23:1201.2. LSA-R.S. 22:658 applies to insurers issuing any type of policy other than life, health or accident and used to apply to worker's compensation insurers and uninsured employers. By the terms of LSA-R.S. 23:1201.2, LSA-R.S. 22:658 is no longer applicable in worker's compensation cases.
Whether a refusal to pay worker's compensation benefits is arbitrary, capricious, or without probable cause is a question of fact, and a trial court's determination regarding such will not be disturbed on appeal unless it is manifestly erroneous. Golden v. Baker Manufacturing, 493 So.2d 871 (La.App. 3rd Cir.1986); Williams v. Western Preferred Casualty Insurance Company, 465 So.2d 191 (La.App. 3rd Cir. 1985). Whether a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on facts known to the employer or insurer at the time of its action. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La.App. 3rd Cir. *1115 1981), writ denied, 412 So.2d 85 (La.1982). These two jurisprudential rules are equally applicable to the determination of whether a penalty should be assessed under the new standard set out in LSA-R.S. 23:1201 E, that is, whether an employer or insurer could have reasonably controverted the employee's claim for benefits.
The finding by the trial court that the actions of defendants in denying benefits were arbitrary, capricious, and without probable cause logically precludes any possibility that the court could have found that the defendants reasonably controverted plaintiff's claim.
Plaintiff did not mention the accident to his two co-workers on the job with him. The accident was not reported as required by Company policy. The evidence is contradictory regarding whether plaintiff mentioned that he was hurt on a job to Mr. Malone or told him only that it was a recurring pain related to his 1982 injury. Dr. Mayer had no documentation that plaintiff ever mentioned any job related accident until February 28, 1985, almost nine months after the accident. Dr. Mayer's August 1984 report clearly indicated it was his opinion that plaintiff's complaints of pain stemmed from the 1982 injury. Defendant, Travelers, apparently denied plaintiff's compensation claim based on the occupational injury report which stated that plaintiff's complaints of pain were from the recurring injury in 1982. Plaintiff had never made a claim for worker's compensation benefits for the February 1982 injury and any such right had prescribed by this time. LSA-R.S. 23:1209. Even though subsequent to receiving the notice of denial plaintiff allegedly had his memory refreshed about the actual slip and fall, he did not communicate any facts remembered to anyone at Schlumberger or to Dr. Mayer until eight or nine months after the accident. Plaintiff did not submit a claim to Office of Worker's Compensation until January 22, 1985.
Under these circumstances, we feel both Travelers and Schlumberger reasonably controverted plaintiff's claim and any failure to pay worker's compensation benefits was not arbitrary, capricious, or without probable cause. The finding of the trial court to the contrary was manifestly erroneous.

CREDIT FOR BENEFITS
On appeal, defendants contend that the trial court erred in failing to offset against the award of compensation the amount of benefits paid to plaintiff under Schlumberger's "Salary Continuation Plan." We agree. LSA-R.S. 23:1225 C(1) requires reduction of worker's compensation benefits as follows:
....
"If an employee receives remuneration from: (a) benefits under the Louisiana worker's compensation law, (b) old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury." (emphasis added)
Under the "Salary Continuation Plan" provided by Schlumberger, an employee who is disabled, whether on or off the job, may receive benefits for up to two years (up to twenty-seven weeks of full base pay and seventy-seven weeks of half pay depending on length of employment). The employee pays no premium of any sort for this benefit. If the employee is disabled on the job and receives worker's compensation benefits, benefits will be paid under the company plan only in an amount which, when added to the worker's compensation benefits, will equal such full or half pay the *1116 employee is entitled to receive under the company plan.
At the time of the June 4, 1984 accident, plaintiff was entitled to receive benefits under the company plan of up to eleven weeks of full base pay and ninety-three weeks of one-half pay. The record is devoid of any documentary evidence indicating whether plaintiff received any benefits under the company plan or the amount of any such benefits. However, an employee of Schlumberger, Chris Paraghamian, testified, apparently from documents in his possession, that plaintiff received disability benefits from Schlumberger in the amount of $873.50 twice a month for eleven weeks. He continued to receive, at the time of trial, benefits in the amount of $465.86 twice a month. The larger of these figures, Mr. Paraghamian testified, represented plaintiff's full pay while the other represented half pay. The obvious inconsistency between these figures was not explained. Based on these figures, plaintiff's monthly salary could be either $1,747.00 or $1,863.44. Plaintiff testified that his monthly salary or income was $1,618.00. Using the figure of $245.00 per week, the amount awarded by the trial court as 66 2/3 percent of plaintiff's wages, his full monthly salary would have been $1,592.50. The record also lacks any documentary evidence establishing the correct amount of plaintiff's wages.
The plain language of LSA-R.S. 23:1225 C(1) makes it clear that any amount awarded plaintiff as compensation for wages should have been reduced so that defendants received a full credit for any amounts paid to plaintiff by Schlumberger through its "Salary Continuation Plan." The trial court erred in failing to give defendants such credit. Unfortunately, we are unable to make a just decision regarding such credit because of the inconsistencies regarding plaintiff's wages. We cannot give defendants a credit based on $1,863.44 or $1,747.00 per month as plaintiff's salary against an award of worker's compensation benefits based on $1,592.50 per month as plaintiff's salary. In the interest of fairness to all parties, we remand this matter for a determination, supported by any available documentary evidence, of the amount of plaintiff's wages at the time of the accident and an amount to be credited to defendants consistent with LSA-R.S. 23:1225 C(1) and this opinion.

CREDIT FOR MEDICAL PAYMENTS
Plaintiff lastly contends that the trial court erred in failing to give appellants credit for medical expenses which had been paid by defendant Schlumberger through its health care plan administrator, Aetna Life Insurance.
Plaintiff admitted that "most" of his medical bills had been paid by Aetna Life Insurance Company. When asked who paid for her husband's medical bills, plaintiff's wife stated that they were submitted to Aetna. Both testified that the Aetna coverage was procured through Schlumberger. Schlumberger's health care plan is "administered" by Aetna and the benefits under the plan are provided to an employee at no cost to him. There is a cost, however, if an employee wishes to have his dependents covered under the plan.
Defendants introduced and filed in the record an "Administrative Services Contract" between Aetna, Schlumberger, and the Administrative Committee of the Schlumberger Group Health Care Plan. The contract provides that should Aetna choose to advance any funds, Schlumberger shall reimburse Aetna for the payment. The contract also provides that Schlumberger shall furnish a written notice to each employee covered under the plan advising that Schlumberger assumes "complete financial liability for the payment of benefits under the plan and that benefits under the plan will not be insured by Aetna." Under the contract it is clear that Aetna only administers Schlumberger's health care plan and is not liable itself for payment of benefits under the plan. Aetna, in other words, is not acting in its capacity as an insurer. Schlumberger pays for all benefits provided under the plan.
LSA-R.S. 23:1203 provides in pertinent part:

*1117 "A. In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such services and treatment shall be performed at facilities within the state when available.
* * * * * *
C. In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee in order to obtain the services, medicines, and prosthetic devices which the employer is required to furnish under this Section."
Schlumberger fulfilled most of its duty required under the statute by paying most of plaintiff's medical expenses through Aetna. The trial court however, denied any credit or offset to defendants. The court stated in its reasons for judgment:
"Insofar as medical is concerned, all bills (P-3) are allowed. These were apparently paid for under the Administrative Services Contract, which is outside of Workmen's Compensation, but was not paid under Workmen's Compensation. These are due."
We find the trial court's action to be manifestly erroneous. To the extent that plaintiff's medical expenses were paid by Schlumberger through its health care plan administered by Aetna, defendant discharged its duty under LSA-R.S. 23:1203. The statute contemplates however, that the employer pay all of the employee's expenses listed in the statute. Schlumberger's health care plan only pays for certain percentages of various medical expenses. Unfortunately, by agreement of both counsels, the medical bills were not introduced and filed in the record. Although a Schlumberger employee benefits booklet describes the percentage of medical expenses which will be paid by the company, the record lacks evidence indicating the amount actually paid in this case. Because of these reasons, we are unable to determine an amount to which defendants are entitled credit. Because plaintiff admits most of his medical bills were paid by Aetna, we feel that, in the interest of fairness to all parties, a remand of this case is required for a determination of the amount of plaintiff's medical expenses paid through Schlumberger's health care plan at the time of the original trial of this matter. This amount shall be deducted from any amount which the trial court would have awarded plaintiff for medical expenses at the time of the original trial of this matter.
For the reasons assigned:
IT IS ORDERED, ADJUDGED, AND DECREED that the judgment of the trial court in favor of plaintiff, Bookie J. Fontenot, and against defendants, Schlumberger Well Service and The Travelers Insurance Company, is affirmed insofar as it awards plaintiff temporary total disability compensation from June 4, 1984 to May 15, 1985.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all other parts of the judgment of the trial court, including the dollar amounts of all awards, are hereby vacated.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this case be remanded to the trial court for a proper determination of:
1) The amount of plaintiff's wages;
2) The amount of benefits paid to plaintiff under Schlumberger's "Salary Continuation Plan" from June 4, 1984 to May 15, 1985;
3) The amount of worker's compensation benefits to be awarded plaintiff in accordance with LSA-R.S. 23:1221(1) and LSA-R.S. 23:1225 C(1) and based on 1) and 2) of this order;
4) The amount of plaintiff's medical expenses at the time of the original trial of this matter related to his June 4, 1984 injury;
5) The amount of the above medical expenses paid through Schlumberger's health care plan; and

*1118 6) The amount to be awarded plaintiff based on the difference between 4) and 5) of this order.
Costs of this appeal are assessed one-half against plaintiff-appellee and one-half against defendant-appellant.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED IN PART.
NOTES
[*] Judge WILLIAM A. CULPEPPER, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.