585 So.2d 1229 (1991)
Randall L. McKENZIE, Plaintiff-Appellee,
v.
CITY OF BOSSIER CITY, Louisiana, Defendant-Appellant.
No. 22578-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1991.
*1231 Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendant-appellant.
Bruscato, Loomis & Street by C. Daniel Street, Monroe, for plaintiff-appellee.
Before LINDSAY, HIGHTOWER and STEWART, JJ.
LINDSAY, Judge.
The defendant, the City of Bossier City, appeals from a trial court judgment granting worker's compensation benefits to the plaintiff, Randall L. McKenzie, in addition to his disability retirement benefits. The defendant also appeals that part of the trial court judgment assessing penalties and attorney fees for its failure to pay worker's compensation benefits. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff had been employed for more than twenty years as a fireman with the Bossier City Fire Department and had achieved the rank of captain. In 1988, the plaintiff was diagnosed as having obstructive lung disease, specifically, the plaintiff was found to have asthmatic bronchitis. The plaintiff was advised by doctors not to continue working in smokey environments. Upon notifying his superiors at the fire department that he had obstructive lung disease, the plaintiff was told that he could not continue as a fire fighter. Plaintiff was advised to apply for a disability retirement.
On September 29, 1988, the plaintiff submitted a letter to the retirement board of the Bossier City Fire Department requesting a medical retirement at 75% of his current salary. The plaintiff also requested, "the said 75% of my salary to be separate from any heart and lung bill benefits." In accordance with his request, the plaintiff was granted a medical retirement effective October 26, 1988.
Thereafter, plaintiff sought to obtain worker's compensation benefits under LSA-R.S. 33:2581, commonly known as the fireman's heart-lung statute. This statute provides that any disease of the heart or lungs, which is manifested after five years of employment, is presumed, prima facie, to have developed during, and to have been caused by, the employment.
The defendant contended that the plaintiff's condition was not caused by his duties as a fire fighter, but rather was attributable to his heavy cigarette smoking for more than twenty years. The city refused to pay worker's compensation benefits and submitted the claim to the worker's compensation office which denied the plaintiff's claim. The plaintiff then filed suit in district court.
Trial on the merits was held on March 13, 1990. At trial, the defendant contended that the plaintiff failed to sufficiently show that his lung condition was related to his employment. Rather, the defendant argued that even though the medical testimony showed that working in a smoke filled *1232 environment would aggravate the plaintiff's condition, the condition was actually caused by cigarette smoking.
The trial court found in favor of the plaintiff, awarding him worker's compensation benefits and awarding penalties and attorney fees against the defendant. In written reasons for judgment, the trial court found that the plaintiff suffered from obstructive lung disease and that pursuant to advice from the fire department he obtained a medical disability retirement. The court found that the plaintiff was also entitled to worker's compensation benefits under the heart-lung statute. The court stated that under the statute, the plaintiff had established prima facie that his disease was work related and that the burden then shifted to the defendant-employer to rebut the presumption. The trial court found that the defendant had failed to rebut the presumption. Accordingly, the plaintiff was found to be temporarily totally disabled and entitled to compensation benefits of $267 per week from October 26, 1988, until he is able to return to work. The defendant was also ordered to pay reasonable medical expenses.
The court found the worker's compensation benefits were to be paid in addition to the plaintiff's medical disability retirement. The court also found that the defendant was arbitrary and capricious in failing to pay the plaintiff's claim. Therefore, the court assessed a 12% penalty and awarded the plaintiff $6,000 in attorney fees.
The defendant appealed the trial court judgment. On appeal, the defendant makes the following contentions:
The defendant argues that the medical testimony did not establish that the plaintiff's condition was caused by his employment, but was in fact attributable to his cigarette smoking.
The defendant also contends that if the plaintiff is entitled to worker's compensation benefits, the city should receive a reduction for amounts paid toward the plaintiff's medical disability retirement. The defendant further contends that the city should receive credit for medical benefits being paid on behalf of the plaintiff under the group medical insurance plan.
The defendant contends that the plaintiff is not entitled to worker's compensation benefits because he has achieved maximum medical improvement and should be subject to rehabilitation efforts and supplemental earnings.
The defendant also argues that the trial court erred in awarding penalties and attorney fees to the plaintiff. The defendant asserts that, in refusing to pay the plaintiff's worker's compensation claim, it did not act arbitrarily, capriciously, or without probable cause but that, considering the medical statements given by physicians who had examined the plaintiff, the issue of whether the plaintiff was in fact entitled to worker's compensation benefits was reasonably controverted.

ENTITLEMENT TO WORKER'S COMPENSATION BENEFITS
The defendant contends that the trial court erred in finding that it did not meet its burden under the heart-lung statute of LSA-R.S. 33:2581, of showing that the plaintiff's condition was not caused by or resulted from the nature of the work performed. This argument is meritless.
LSA-R.S. 33:2581 provides:
Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the state of Louisiana shall be classified as a disease or infirmity connected with employment. The employee affected, or his survivors, shall be entitled to all rights and benefits as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during employment and shall be presumed, prima facie, to have been caused by or to have resulted from the nature of *1233 the work performed whenever same is manifested at any time after the first five years of employment.
This provision, although not a part of the Worker's Compensation Act embodied in LSA-R.S. 23:1021, et seq., is applicable to worker's compensation cases. Saling v. City of New Orleans, 398 So.2d 1205 (La.App. 4th Cir.1981), writ denied 401 So.2d 986 (La.1981).
In the enactment of this statute, the legislature provided that upon proof of the existence of a covered disease, the burden of proof is shifted to the employer to prove the lack of causation between the disease and the employment. Vincent v. City of New Orleans, 326 So.2d 401 (La.App. 4th Cir.1975), writ denied 329 So.2d 760 (La. 1976).
In the present case, the defendant contends that it carried its burden of proving that the plaintiff's lung disease was not caused by his work as a fire fighter. The defendant argues that the medical testimony shows that inhalation of smoke on the job did not cause the plaintiff's obstructive lung disease.
In his deposition, Dr. Richard Denman Crow, the plaintiff's family physician, testified that the plaintiff consulted him in 1988 with respiratory complaints. At that time, Dr. Crow diagnosed the plaintiff as having asthmatic bronchitis with emphysema. Dr. Crow stated that both fire fighting and smoking would aggravate the plaintiff's condition.
Dr. Crow referred the plaintiff to Dr. Janice Gunnels, a specialist in pulmonary disease. The plaintiff told Dr. Gunnels that he smoked cigarettes and also that he inhaled smoke throughout the course of his fire fighting career. Dr. Gunnels tested the plaintiff and found that he had asthmatic bronchitis and that his symptoms, such as shortness of breath, could be relieved somewhat through the use of medication known as a bronchodilator. Dr. Gunnels felt that the allergic component to the plaintiff's condition was largely inherited, but that his condition was aggravated by exposure to smoke. While she found that cigarette smoking would aggravate the plaintiff's condition, she stated that the heat and exertion associated with fire fighting would also aggravate his condition.
In 1989, the plaintiff was evaluated by Dr. Randy D. Bryn, also a specialist in pulmonary disease. Dr. Bryn found that the plaintiff's condition had worsened somewhat since his prior evaluation in 1988 and that his condition was less responsive to treatment with bronchodilators. Dr. Bryn stated he could not determine whether it was smoking cigarettes or breathing smoke and fumes at fires which had the most significant impact in the plaintiff's lung function. Nor did Dr. Bryn find it unusual that plaintiff's lung condition continued to worsen after he stopped working as a fire fighter. However, Dr. Bryn stated that the plaintiff should not be exposed to any type of noxious fumes or dust which could continue to worsen or exacerbate his obstructive lung disease.
Based upon this medical evidence, we do not find that the trial court erred in finding that the defendant failed to carry its burden of proving that the plaintiff's condition was not caused by or resulted from his duties as a fire fighter. Although plaintiff's cigarette smoking had some effect on his condition, the medical testimony also shows that breathing noxious fumes, coupled with the heat and the physical exertion involved in fire fighting, were also factors in the development of the plaintiff's lung disease. As Dr. Bryn stated, he could not conclusively state which factor had the most significant impact on the development of the plaintiff's condition. Such evidence is not sufficient to carry the defendant's burden of proving that the plaintiff's condition was not the result of his work as a fire fighter. Therefore, the trial court judgment finding that the plaintiff is entitled to worker's compensation benefits under the heart-lung bill is affirmed.[1]
*1234 MAXIMUM MEDICAL IMPROVEMENT
The defendant contends that if the plaintiff is found to be entitled to worker's compensation benefits, that he has achieved maximum medical improvement and should be subject to rehabilitation efforts pursuant to LSA-R.S. 23:1226.
The exact intent of appellant's argument in this regard is unclear. First, the defendant's contention that the plaintiff has achieved maximum medical improvement is controverted by the medical testimony at trial. Dr. Bryn stated that the plaintiff's condition was actually deteriorating, rather than improving.
Further, LSA-R.S. 23:1226 is designed to be a benefit for an injured employee and is an obligation of the employer. That statute, as it existed at the time of the plaintiff's claim, provided in pertinent part:
When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or insurer shall provide such injured employee with appropriate training and education for suitable gainful employment and may utilize programs provided by state and federal agencies for vocational education when conveniently available or may utilize any public or private agency cooperating with such state and federal agencies in the vocational rehabilitation of such injured employee. In the absence of such programs the employer or insurer shall provide vocational rehabilitation with available private agencies.
In addition, that statute provides that, "refusal to accept rehabilitation as deemed necessary by the director or the court shall result in a fifty percent reduction in weekly compensation, including supplemental earnings pursuant to R.S. 23:1221(3), for each week of the period of refusal."
In the instant case, the defendant has not shown that the plaintiff has requested rehabilitation services nor has the defendant shown that it has offered such services to the plaintiff and the plaintiff has refused them. At trial, the defendant offered the testimony of Diane Herbst, an expert in the field of vocational rehabilitation. Ms. Herbst testified that she had not been allowed to personally interview the plaintiff in order to determine the type of work for which plaintiff might be suited.
Ms. Herbst was not hired until approximately one week prior to trial and the defendant never offered any evidence that a rehabilitation program had been offered to the plaintiff or that he had refused it. Ms. Herbst's testimony showed only that taking into consideration the plaintiff's age, weight, height, medical history and educational background, he was employable as a dispatcher or was employable doing some type of light delivery work. However, Ms. Herbst's testimony did not establish that such positions were available for the plaintiff in these fields.
Based upon the showing made by the defendant, any claim regarding rehabilitation under LSA-R.S. 23:1226 is meritless.
In connection with his argument regarding rehabilitation, the defendant contends that because Mr. McKenzie "has reached maximum medical improvement [he] should be subject to rehabilitation efforts and any supplemental earnings." In its brief, the defendant makes no argument regarding "supplemental earnings" mentioned in the assignment of error. Therefore, we consider any argument in this regard to be abandoned. Nevertheless, we note that in light of plaintiff's medical condition, there was no showing that plaintiff was able to work or that any employment was available.
This assignment of error has no merit.

CREDIT FOR MEDICAL DISABILITY RETIREMENT BENEFITS
The defendant argues that in awarding worker's compensation benefits *1235 to the plaintiff, the trial court failed to give the defendant credit for the medical disability retirement benefits being paid to the plaintiff "in accordance with its contribution to the plan."
The defendant contends that if the plaintiff is entitled to worker's compensation benefits under the heart-lung statute, then under the authority of LSA-R.S. 23:1225 C(1), the defendant is entitled to a reduction or offset commensurate with the amount of disability retirement benefits paid to the plaintiff.
LSA-R.S. 23:1225 C(1) provides:
If an employee receives remuneration from (a) benefits under the Louisiana Worker's Compensation Law, (b) old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration from (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury.[2]
It has been established that an employer must make a judicial demand in order to claim such an offset under LSA-R.S. 23:1225. Holmes v. International Paper Company, 559 So.2d 970 (La.App. 2d Cir. 1990); Necaise v. A.C. Company, of South Louisiana, Inc., 499 So.2d 1074 (La.App. 3rd Cir.1986); Jackson v. Maloney Trucking and Storage, Inc., 442 So.2d 849 (La. App. 4th Cir.1983). In this case, the defendant did make a judicial demand in its supplemental and amending answer for "credit for any retirement funds, disability funds, Social Security funds or any other funds" that the plaintiff is receiving.
However, the jurisprudence construing LSA-R.S. 23:1225, as applied to the facts of this case, does not establish that the defendant is entitled to an offset for its contribution to the plaintiff's disability retirement benefits. The defendant relies on Fontenot v. Schlumberger Well Service, 503 So.2d 1109 (La.App. 3rd Cir.1987), in seeking an offset. In Fontenot v. Schlumberger Well Service, supra, the employer sought to gain an offset under LSA-R.S. 23:1225 for worker's compensation benefits where the employee was also receiving benefits from a salary continuation plan. However, because of the nature of the benefit received, Fontenot is distinguishable from the present case.
In Fontenot, the court was construing the applicability of LSA-R.S. 23:1225 to a situation where the injured employee was not receiving disability retirement, but instead was being paid during the term of his disability under a separate scheme of disability insurance provided by his employer. Also, under the specific terms of the plan, the employer was allowed credit for payments made under the plan against any worker's compensation benefits that might be due.
Under those facts, the Fontenot court was correct in finding that LSA-R.S. 23:1225 C(1)(c) applied. However, in the present case, the employee is receiving retirement benefits and not benefits under a separate disability plan.
Further, the cases of Lambert v. Board of Trustees, Employees Retirement System, 517 So.2d 1282 (La.App. 4th Cir.1987), writ denied 519 So.2d 771 (La.1988), and Patterson v. City of Baton Rouge, 309 So.2d 306 (La.1975) are distinguishable from the present case. In both cases, offsets of worker's compensation benefits and retirement benefits were allowed where such an offset was specifically provided for by ordinance. No such ordinance has been shown to exist in the present case.
Rather, we find the discussion of the issue of offsets for disability retirement benefits against worker's compensation *1236 benefits as discussed in Domingue v. Hartford Insurance Company, 568 So.2d 221 (La.App. 3rd Cir.1990), writ denied 571 So.2d 654 (La.1990), to be dispositive in this case. In Domingue, a hospital worker was injured on the job and was permanently and totally disabled. She sought worker's compensation benefits and also obtained a disability retirement from the hospital. The court found that the defendant was not entitled to an offset for disability retirement benefits under LSA-R.S. 23:1225. The court stated, "La.R.S. 23:1225 nowhere provides for a reduction of benefits paid under the provisions of the workmen's compensation statute for retirement benefits." In Domingue, the court noted that the plaintiff had been employed since 1947 and was entitled to either early retirement or disability retirement and that her retirement benefits would be the same under either a disability retirement or under early retirement. In the present case, the evidence shows that the plaintiff had been employed by the defendant for more than twenty years. The issue of the plaintiff's entitlement to retirement benefits was never disputed in this case. We find that the reasoning of Domingue is applicable to the present case.
Therefore, for the reasons stated above, we find that LSA-R.S. 23:1225 does not require a reduction of benefits paid under the provisions of the worker's compensation statute for disability retirement benefits.

MEDICAL EXPENSES
The defendant claims that the trial court failed to give credit for medical benefits paid by the city under its group medical plan. This argument is meritless.
The plaintiff, in his petition, sought to recover for medical expenses incurred in the treatment of his disease. Under LSA-R.S. 23:1203, the defendant is required to pay such expenses. However, the defendant contends that it should be given credit for amounts paid for medical expenses under its group health insurance plan.
At trial, the defendant presented the testimony of Mr. Charles M. Deudra, who was the assistant risk manager, in charge of insurance for the City of Bossier City, in 1988. Mr. Deudra testified that the city pays all the premiums for "major medical hospitalization" for fireman employed by the defendant.
However, the defendant failed to furnish a copy of its group health insurance policy showing what expenses were covered. Further, the defendant offered no proof of what expenses, if any, were actually paid on behalf of the plaintiff.
In addition to the lack of evidence presented by the defendant, we note that in Woolsey v. Cotton Brothers Bakery Company, Inc., 535 So.2d 1119 (La.App. 2d Cir.1988), writ denied 537 So.2d 1168 (La. 1989), this court considered a similar claim in which the employer paid all premiums for group health insurance for the plaintiff-employee. This court held, relying upon Bryant v. New Orleans Public Service, Inc., 414 So.2d 322 (La.1982), that furnishing premiums for medical insurance is an earned employee fringe benefit. To allow an offset for medical expenses paid by the group health insurer would amount to an indirect payment by the employee toward the cost of worker's compensation coverage, a practice which is proscribed by LSA-R.S. 23:1163. Accordingly, the defendant in this case is not entitled to an offset for medical expenses paid by the city's group health insurance policy.

PENALTIES AND ATTORNEY FEES
The defendant argues that the trial court erred in awarding penalties and attorney fees to the plaintiff. This argument is meritless.
As to the award of penalties, LSA-R.S. 23:1201(E) provides in pertinent part:
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsection B, C or D of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such *1237 nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalty set forth in this Subsection shall not apply.
A claim is reasonably controverted if the employer or the insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Woolsey v. Cotton Brothers Bakery Company, Inc., supra; Holmes v. International Paper Company, 559 So.2d 970 (La.App. 2d Cir.1990).
A claimant is also entitled to attorney fees if the failure to pay benefits is found to be arbitrary, capricious or without probable cause. LSA-R.S. 23:1201.2; Woolsey v. Cotton Brothers Bakery Company, Inc., supra; Holmes v. International Paper Company, supra; Green v. Jackson Rapid Delivery Service, Inc., 506 So.2d 1345 (La.App. 2d Cir.1987). LSA-R.S. 23:1201.2 provides in pertinent part:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due.
A determination of whether a defendant should be cast with penalties and attorney fees is essentially a question of fact and the trial court's findings shall not be disturbed on appeal absent manifest error. Foster v. Manville Forest Products, Inc., 554 So.2d 736 (La.App. 2d Cir.1989), writ denied, 558 So.2d 605 (La.1990); Holmes v. International Paper Company, supra; Brown v. Manville Forest Products Corporation, 565 So.2d 496 (La.App. 2d Cir.1990).
In this case, the trial court found that the defendant was arbitrary and capricious in failing to pay the plaintiff's claim. This finding was based primarily upon the testimony of Shirley Fritch, the claims adjuster handling this claim. Ms. Fritch incorrectly believed that the plaintiff bore the burden of proving that his condition was caused by his employment, rather than recognizing that under the heart-lung statute, there was a presumption that the condition was employment related and the defendant must rebut the presumption.
The defendant argues that it justifiably denied the claim. The defendant asserts that due to the information before it, the issue of the plaintiff's entitlement to worker's compensation benefits was reasonably controverted. The defendant claims that Ms. Fritch had the notes from Dr. Crow, the plaintiff's family physician, as well as test results from Dr. Gunnels, a pulmonary specialist. Ms. Fritch also obtained the duty logs from the fire department in order to determine the number of fires the plaintiff worked in the preceding few years. Based upon this information, Ms. Fritch concluded that the plaintiff's condition was not related to his employment with the fire department.
However, at trial it was demonstrated that Ms. Fritch had not properly construed the heart-lung statute and was under the mistaken impression that the plaintiff bore the burden of conclusively proving that his condition was work related. Based upon this sketchy factual investigation and the incorrect interpretation of the applicable law by the defendant, we cannot say that the trial court was manifestly erroneous in finding that the defendant was arbitrary and capricious in denying the plaintiff's claim. Therefore, we affirm the trial court judgment assessing penalties and attorney fees against the defendant.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court in favor of *1238 the plaintiff, Randall L. McKenzie, and against the defendant, the City of Bossier City.
AFFIRMED.
NOTES
[1] The defendant also claims that the plaintiff failed to show that LSA-R.S. 33:2581 applies to this case because he failed to show that he was employed in a "classified fire service" as required by the statute. This argument was not raised in the trial court nor was it ruled upon by that court and therefore cannot be considered on appeal. See Uniform Rules of Courts of Appeal 1-3.
[2] The above quoted statute was in effect at the time the plaintiff's claim arose. The statute has been amended by Acts 1989, No. 454, Section 6, effective January 1, 1990.