# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1132


**BRIAN BACA**

**VERSUS**

**NATCHITOCHES PARISH HOSPITAL**


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF RAPIDES, NO. 05-03295
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Marc T. Amy, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

John B. Saye
Hayes, Harkey, Smith & Cascio, L.L.P.
Post Office Box 8032
Monroe, LA   71211-8032
(318) 387-2422
COUNSEL FOR DEFENDANT/APPELLANT:
    Natchitoches Parish Hospital

J. Chris Guillet
507 Second Street
Natchitoches, LA   71457
(318) 354-1377
COUNSEL FOR PLAINTIFF/APPELLEE:
    Brian Baca

AMY, Judge.

In this workers' compensation matter, the plaintiff-employee alleged that he was injured while in the course and scope of his employment with the defendant hospital. The employee did not immediately report the accident. After an investigation, the defendant denied the claim, alleging that the employee's injury was not work-related. The employee subsequently filed a disputed claim for compensation, seeking medical benefits, penalties, and attorney's fees. Following a trial, the workers' compensation judge found that the employee was entitled to medical benefits and ordered the defendant to pay the employee's medical bills and court costs. The defendant appeals the finding that the employee's accident occurred in the course and scope of his employment and that the employee established the causation of his injury. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that on November 29, 2004, the plaintiff, Brian Baca (Baca), was employed by the defendant, Natchitoches Parish Hospital (the Hospital), as a paramedic. According to Baca, it was raining that night, and he and his partner received a call concerning a single car motor vehicle accident. When they arrived on the scene, they found the victim lying in a ditch. Baca testified that he and his partner put the victim on a spine board and were carrying the victim out of the ditch when his foot slipped, and he felt a "twinge" or a "little pop" in his back. He stated that there was no immediate pain; however, a few days later, he experienced some pain and stiffness in his back.

Baca scheduled an appointment with Dr. Carl Goodman, an orthopedic surgeon at Highland Clinic, who had performed back surgery on him in 2003. On December 8, 2004, Baca was examined by Dr. Goodman who, according to Baca, told him:

[H]e just thought it was some inflammation from my old injury from the previous surgery. And he told me to go home, take some ibuprofen or Aleve, which I usually take. And he told me in a week if it doesn't feel like it's getting any better, give him a call back and he'd schedule an MRI. And that's what happened. We scheduled an MRI.

. . . .

The MRI revealed a new injury to the disc above the old one. And he said my old surgical site was perfectly fine. There was nothing wrong, no inflammation, nothing wrong with it. He said it was a new injury.

Baca testified that after receiving this information, he informed the Hospital of the accident on January 10, 2005 by filling out an "Employee Report of Injury/Illness/Incident" form.

Linda Hollingsworth (Hollingsworth), an insurance adjuster for Hospital Services of Louisiana (HSL), stated that HSL handles the workers' compensation claims for the Hospital. She testified that after receiving the Employer Report of Injury form on January 18, 2005, she faxed a questionnaire to Dr. Goodman on March 15, 2005 regarding Baca's injuries and treatment. According to a copy of the fax entered into evidence, Dr. Goodman responded to the questions as follows:

1) What was the history given to you? Injury, Thanksgiving

2) What is your diagnosis? recurrent L disc herniation

3) Is the employee disabled from his/her employment? No.

4) If so, what are the inclusive dates of his/her disability? [No answer.]

5) What is the treatment plan? Surgery?

On March 23, 2005, Hollingsworth interviewed Baca. On that same day, she requested Baca's medical records from Dr. Goodman, which she stated were not sent right away. Hollingsworth testified that when she received the medical records, she read a report dated December 8, 2004 in which Dr. Goodman noted: "LB & R [low

2

back and right] leg pain started about 2 weeks ago after playing volleyball on Thanksgiving[.]" She testified that she sent a letter to Baca dated April 1, 2005, informing him that his claim was denied because "Dr. Goodman's report of December 8, 2004 states that you had a back injury at Thanksgiving from playing volleyball. There was no history of a work related injury."

In response, Baca filed a disputed claim form on May 11, 2005, seeking "medical benefits and penalties and attorney's fees for the employer's arbitrary denial of the claim." Following a trial, the workers' compensation judge found that Baca was entitled to medical benefits and ordered that the Hospital pay his medical bills "without the benefit of the offset or reduction provided by the Louisiana Worker's Compensation Fee Reimbursement Schedule[.]" The workers' compensation judge assessed the Hospital with court costs and denied Baca's request for penalties and attorney's fees. The Hospital now appeals, asserting two assignments of error.

1.  The workers' compensation court erred in determining that the plaintiff established by [a] preponderance of the evidence that an accident occurred in the course and scope of his employment.

2.  The workers' compensation court erred in determining that the plaintiff established, more probably than not, the causation of his injury.

Baca answered the appeal, designating the following as error:

1.  The trial court erred in concluding that the employer could reasonably controvert the claim, because the employer did not undertake an investigation sufficient to determine whether the employee's claim was valid.

2.  The trial court erred in failing to award penalties and attorney's fees for the employer's failure to investigate and timely pay the claim.

**Discussion**

*Work-Related Accident*

The Hospital argues that Baca did not establish by a "preponderance of the evidence that an accident occurred in the course and scope of his employment." It points out that Baca did not immediately report the accident to his supervisor in accordance with hospital procedure. Furthermore, the Hospital asserts that when Baca sought treatment with Dr. Goodman on December 8, 2004, he did not state that his injury was work-related but rather stated that it occurred while he was playing volleyball on Thanksgiving.

In a workers' compensation case, the plaintiff has the burden of proving, by a preponderance of the evidence, that a work-related accident occurred. *Fluitt v. Christus Health Cent. La.*, 05-945 (La.App. 3 Cir. 6/28/06), 935 So.2d 369, *writ denied*, 06-2302 (La. 12/8/06), ___ So.2d ___. In *Fluitt*, this court went on to explain:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.

*Id*. at 377 (quoting *Bruno v. Harbert Int'l Inc.,* 593 So.2d 357, 361 (La. 1992)) (citations omitted). The workers' compensation judge's factual determinations will not be overturned on appeal absent manifest error. *Id*.

In his oral ruling, the workers' compensation judge explained:

> [T]he essential issue before the Court, [sic] is Mr. Baca able to establish by [a] preponderance of the evidence that he sustained an accident in the course and scope of his employment such that he may be entitled to have

4

recovery of his medical expenses. As pointed out by counsel for Mr. Baca in his pre-trial brief, the issue primarily centers around this Court's assessment of the credibility of Mr. Baca.

Of course, Dr. Goodman's medical record from December 8th of 2004 in the present illness section right at the top of that report, "Present illness, lower extremity and right leg pain started about two weeks ago after playing volleyball on Thanksgiving."

And his recommendation is trigger point injection of the lumbar spine -- I can't read part of that -- and a[n] MRI if his complaints are consistent, and he is to continue work. He has a[n] MRI subsequently later that month of December, [sic] 2004, which discloses a herniated disc.

Now, this gentleman did have a previous herniated disc for which Dr. Goodman did surgery. And this MRI in December of 2004 shows a new injury to a different disc than that previously injured in 1991 while Mr. Baca was in Colorado.

. . . .

Mr. Baca testified he thought he had ongoing pain with his previous back problem and more stiffness, not much pain. He hadn't had much pain when he said it popped with the patient [on] November 29th of 2004.

He testified that he was asked at the doctor's office if he'd done anything differently, and he said he played volleyball. He didn't deny anything today that was ever asked of him or ever showed up in any report.

. . . .

He works for the Natchitoches Parish Hospital. It was interesting to the Court that at the beginning of the trial, Natchitoches Parish Hospital only would stipulate to the fact that in the year 2004, this gentleman was an employee. But they wouldn't stipulate that on November 29th of 2004 that he was an employee or in the course and scope of his employment.

Well, they must possess records. They didn't produce any records today to contradict this man in his assertion that on that day, he was fine until a one motor vehicle accident and they retrieved an injured victim and transported him presumably back to Natchitoches Parish Hospital.

5

If they didn't stipulate that he was employed on that date, they should have produced records that he wasn't working on that day and that he didn't respond to any such accident.

He reports his injury on January the 10th of 2005. He reports his accident -- I don't know if -- you really -- it's hard to tell what he was asking the hospital to do for him at that time. He wasn't really asked to do anything. They didn't give him any bills. They wasn't [sic] asking them [sic] to let him to [sic] see a doctor.

He just told them, "I had this accident. I've been to the doctor. I've had this MRI. He says it's a new injury, and the doctor says I may need surgery. And this is how it happened to me," and end of story.

. . . .

I believe when I read Dr. Goodman's testimony, and Mr. Baca's testimony today in trial, he said he tried to tell Dr. Goodman about the incident of the ambulance picking up this gentleman off the side of the road in November of 2004.

Dr. Goodman unfortunately doesn't have any independent memory of these things. But we do know from his record on January 4th of 2005 because of the discussion between he and Mr. Baca about the findings of the MRI. And we see written out there, "Workers' comp?" -- question.

. . . .

And then the health insurer got the records. They saw "Workers' comp?" And they said, "We're not paying." That was long after this gentleman reported this incident to the hospital.

I couldn't find anything inconsistent about Mr. Baca's situation today after I looked at the case hard other than the fact that it says "volleyball Thanksgiving." Because everything else, other than that, is corroborated somewhere or other in the records.

. . . .

Putting all these things together, the Court does find that Mr. Baca has proven by [a] preponderance of the evidence that he had an incident on November 29, 2004 in his response to the single motor vehicle accident where he felt his twinge and pop in his back.

After reviewing the record, we find that it supports a determination that Baca proved by a preponderance of the evidence that his accident occurred in the course

6

and scope of his employment with the Hospital. Baca testified that he was injured on November 29, 2004, while he and his partner were lifting a patient out of a ditch. Although he felt a "twinge" or "little pop" in his back, he stated that he did not immediately feel any pain but that his back was stiff.

Baca testified that over the next couple of days, his back "didn't really hurt a lot. It mostly got stiff. And after a while, [he] started getting those pains like pinching a nerve[.]" He visited Dr. Goodman on December 8, 2004, and Dr. Goodman told him to take over-the-counter medications, and if there was no improvement, he would schedule Baca for an MRI. According to the record dated December 8, 2004, Baca stated that he was injured while playing volleyball on Thanksgiving. At trial, Baca admitted to playing volleyball; however, he insisted that he did not tell Dr. Goodman that this was the cause of his back injury as the volleyball game "wasn't strenuous enough to do that." He explained the misunderstanding:

> When I went to see Dr. Goodman about my back hurting, he had asked me if I had done anything different that week. And I told him yes and [sic] Thanksgiving we played a little game of volleyball.
>
> He didn't ask me if that's how I injured it. He just asked me if I did anything different that week. And that's all I told him was we played volleyball on Thanksgiving.

Baca testified that he tried to contact Dr. Goodman to straighten out the situation but that he was unable to speak with him.

In his deposition taken on April 5, 2006, Dr. Goodman testified that before he sees his patients, his nurse takes a history from them. According to Dr. Goodman, Baca told the nurse that he was injured while playing volleyball on Thanksgiving. He explained that he verified what the nurse wrote by asking Baca the same

questions. Dr. Goodman testified that had Baca told him that his injury was work-related, he would have written it down.

We note that Dr. Goodman admitted that Baca's statement about playing volleyball may have been in response to his nurse asking if he did anything differently. Additionally, Dr. Goodman acknowledged that it was possible that Baca's injury was caused by moving a patient. He agreed with the assertion of plaintiff's counsel that the pain could have been delayed in that Baca may not have been in pain immediately following the accident.

Baca's pain persisted, and an MRI was performed on December 29, 2004. According to Dr. Goodman's records, Baca received the results of his MRI on January 4, 2005. The MRI showed that Baca had "a large right recurrent disc herniation at L4-5[.]" Dr. Goodman testified that although Baca previously had back surgery on the L4-5 level, the MRI showed a new injury at that level.

In a report dated January 4, 2005, Dr. Goodman wrote, "Workers' comp?" Dr. Goodman admitted that he did not know why he had made that notation; however, he reasoned that perhaps Baca "questioned could this be Workers' Comp." Dr. Goodman could not recall if Baca stated that he was injured on the job; however, he stated that "[i]f he did, I didn't write it down at that point."

According to the record, Baca reported the accident to the Hospital on January 10, 2005, by completing a form entitled, "Employee Report of Injury/Illness/Incident." Baca testified that he did not immediately report the accident because "I didn't realize I had re-injured myself. I thought it was just some inflammation, which I always had after that -- after my previous surgery. Every once

8

in a while, it'll inflame like that. It just hurt -- it was just a little worse, then. So I went to see Dr. Goodman."

Based on the aforementioned testimony, we find no manifest error in the workers' compensation judge's determination that Baca proved by a preponderance of the evidence that his injury was sustained in a work-related accident. "The evidence as a whole tends to support his claim even though he did not report the incident to his immediate supervisor on the job or [readily] file a report of injury . . . as required by [hospital] policy." *Fontenot v. Schlumberger Well Serv.*, 503 So.2d 1109, 1113 (La.App. 3 Cir. 1987). Baca consistently recounted the events of November 29, 2004 in his Employee Report form, his pre-trial interview, and his trial testimony. Although Dr. Goodman testified that he had no recollection of Baca stating that this was a work-related injury, Baca insisted that he never stated that he was injured while playing volleyball. We find that the workers' compensation judge, as the finder of fact, was free to accept Baca's testimony that he mentioned playing volleyball only in response to whether he did anything differently. *Patterson v. State*, 95-1668 (La.App. 3 Cir. 12/11/96), 685 So.2d 473, *writ denied*, 97-0027, 97-0108 (La. 2/21/97), 688 So.2d 513.

Accordingly, this assignment is without merit.

*Causation*

The Hospital argues that the "workers' compensation court erred in determining that [Baca] established, more probably than not, the causation of his injury." It points out that Baca suffered a previous back injury in 1991 for which he underwent back surgery in November 2003. Additionally, the Hospital asserts that

9

"on December 8, 2004, [Baca] failed to inform Dr. Goodman of any on-the-job accident."

The claimant bears the burden of proving, by a preponderance of the evidence, that the accident caused his injury and that the injury caused his disability. *Hunter v. Alliance Compressors*, 06-100 (La.App. 3 Cir. 6/21/06), 934 So.2d 225. Causation is a question of fact that will be reviewed under the manifest error standard of review. *Id*.

After reviewing the record, we find that it supports a determination that Baca proved that his work-related accident caused his injury. Baca testified that in 1991, he injured his back while working in Colorado. He further testified that the pain became progressively worse and required that he undergo back surgery on November 17, 2003. Dr. Goodman testified that six weeks after the surgery, Baca was cleared "to return to full-work duties." In January 2004, Baca visited Dr. Goodman for back pain caused by "doing some heavy weight lifting[,] doing squats and leg presses." He was given medication and was told that he could return to work the next day.

Baca's medical records show that he did not see Dr. Goodman again until approximately a week after his accident, complaining of back pain and stiffness. An MRI was subsequently performed which showed that Baca had a large right recurrent disc herniation at the L4-5 level. Dr. Goodman testified that although Baca previously had back surgery on the L4-5 level, the MRI showed a new injury to that level.

Dr. Goodman admitted that it was possible that Baca injured his back when he was lifting the patient and that the pain could have been delayed for days or even weeks. Moreover, Dr. Goodman testified that the nurse may have asked Baca if he

10

did anything differently, to which Baca responded that he played volleyball on Thanksgiving.

We note that, according to Dr. Goodman, Baca's back surgery in 2003 was successful. Other than one incident in early 2004, Baca did not experience any back pain until after his accident on November 29, 2004. An MRI confirmed that this was a new injury. Insofar as Baca was in relatively good health prior to the accident and his back problems began soon after the accident, we find that the workers' compensation judge was not manifestly erroneous in determining that Baca proved by a preponderance of the evidence that his work-related accident caused his injury and that his injury caused his disability. *See Duhon v. Permian*, 01-406, p. 3 (La.App. 3 Cir. 10/3/01), 796 So.2d 822, 824, *writ denied*, 01-2971 (La. 1/25/02), 807 So.2d 842 (where this court explained that "[a]n employee's disability is presumed to result from his accident if, prior to the accident, the employee was in good health, but commencing with the accident 'the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.'")

This assignment is without merit.

*Penalties and Attorney's Fees*

In his answer to the Hospital's appeal, Baca contends that the workers' compensation judge "erred in failing to award penalties and attorney's fees for the employer's failure to investigate and timely pay the claim."

In *Landry v. Furniture Center*, 05-643, p. 10 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-0358 (La. 4/28/06), 927 So.2d 290 (citations omitted), this court stated:

> Under La.R.S. 23:1201(F)[1], a claimant in a workers' compensation claim has the burden of proving his entitlement to statutory penalties for the employer's refusal or failure to timely pay workers' compensation benefits. To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim. The employer must have an "articulable and objective reason to deny benefits at the time it took the action."

The workers' compensation judge's decision to award penalties and attorney's fees will not be overturned on appeal absent manifest error. *Id*.

With regard to the Hospital's investigation of the claim, the workers' compensation judge stated:

> The information was turned in by the hospital to their adjusting group. I don't know why they waited from January of 2005 to March of 2005 to request records from Dr. Goodman. That's why I started asking those questions about when [they] found out about Dr. Goodman.

---

[1] Louisiana Revised Statutes 23:1201(F) provides:

Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.

. . . .

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

Because Mr. Saye [defense counsel] was asking, "Well, you didn't even name Dr. Goodman in your report on January the 10th of 2005."

. . . .

So I'm thinking, "Well, I don't know when this came up. What was the reason for the delay from the reporting of the incident to the requesting of the information?" I don't know if I have a satisfactory conclusion about that.

. . . .

However, I must conclude, even though it seems late to the Court, that there was a question posed to Dr. Goodman about, "What you have on Mr. Baca, what does your records show?" But even if the question was asked the same day the hospital got the report from Mr. Baca and they got the records within a day or two, the records were going to show the hospital this information about the back injury playing volleyball [on] Thanksgiving, which would give them sufficient grounds to deny this gentleman's claim, closed question. And they have the right to bring it to trial.

. . . .

So -- but there are no penalties and attorney's fees, because I have to conclude based on the information contained in Dr. Goodman's records that the employer has sufficient grounds to dispute the claim.

According to the testimony of Hollingsworth, the insurance adjuster, she received the Employer Report form on January 18, 2005. She explained why she waited until March 15, 2005 to request information from Dr. Goodman:

This was set up as a medical-only claim to Courtney Rothenberger. And when she received it, she talked to Sarah Ingram and she said that Mr. Baca had prior back surgery and that he had treated with Dr. Goodman. So Ms. Rothenberger requested any medical that she might have from Ms. Ingram.

Okay, now, this came. Of course, I did not have this until Darla called me on March 15 and asked me about this and about it being work-related. And so I got the employer's report at that point and requested -- of course, I do see that the 1007 does have Doctor . . . Carl Goodman as the physician on here.

In the fax sent on March 15, 2005, Hollingsworth asked Dr. Goodman, "What was the history given to you?" Dr. Goodman responded, "Injury, Thanksgiving[.]"

Hollingsworth testified that she requested Baca's medical records from Dr. Goodman on March 23, 2005, the same day that she conducted an interview with Baca. Hollingsworth remembered receiving the records in March 2005. She testified that Baca's claim was denied because there was not "any medical evidence that pointed to this being a work-related injury carrying a patient up a wet, slippery slope." Hollingsworth pointed out that the medical evidence stated that Baca was injured as a result of playing volleyball on Thanksgiving. Baca was notified of the denial of his claim by a letter dated April 1, 2005.

We note that Hollingsworth waited approximately two months before contacting Dr. Goodman concerning Baca's treatment with him. Nonetheless, Dr. Goodman's answer to the questionnaire and the notation in Baca's medical records that Baca's injury resulted from playing volleyball, gave the Hospital an "articulable and objective reason to deny benefits at the time it took the action." *Landry*, 920 So.2d at 311 (quoting *Authement v. Shappert Eng.*, 02-1631 (La. 2/25/03), 840 So.2d 1181, 1188). Therefore, we find no manifest error in the workers' compensation judge's determination that the Hospital reasonably controverted Baca's claim and that the assessment of penalties and attorney's fees for the failure to pay Baca's medical bills was unwarranted.

Baca also alleges, in his answer to the appeal, that he should be "awarded attorney's fees for the work performed pursuant to this appeal." Because we have held that the workers' compensation judge did not err in denying Baca's request for penalties and attorney's fees pursuant to La.R.S. 23:1201(F), Baca's request for additional attorney's fees is denied. *Richard v. Workover & Completion*, 00-794 (La.App. 3 Cir. 12/6/00), 774 So.2d 361.

14

This assignment lacks merit.

## DECREE

For the foregoing reasons, the ruling of the workers' compensation judge is affirmed. All costs of these proceedings are assessed against the defendant, Natchitoches Parish Hospital.

**AFFIRMED.**